O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AWI BUILDERS, INC. a California corporation, | Case No. 2:19-cv-05677-MEMF-AJR |
| Plaintiff, | **ORDER RE POST-TRIAL MOTIONS [ECF NOS. 331, 332, 334]** |
| v. | |
| THYSSENKRUPP ELEVATOR CORPORATION, a Delaware corporation doing business as THYSSENKRUPP ELEVATORS; FEDERAL INSURANCE COMPANY, a NEW JERSEY Corporation and DOES 1 through 200, inclusive, | |
| Defendants. | |
| THYSSENKRUPP ELEVATOR CORPORATION, a Delaware corporation, | |
| Counter-Claimant, | |
| v. | |
| AWI BUILDERS, INC., a California corporation; FULLERTON JOINT UNION HIGH SCHOOL DISTRICT, a California public entity; THE OHIO CASUALTY INSURANCE COMPANY, a New Hampshire corporation; GREAT AMERICAN INSURANCE COMPANY, an Ohio corporation; HANOVER INSURANCE COMPANY, a California company and ROES 1 through 25, inclusive, | |
| Counter-Defendants, | |

The following items are before the Court: a Motion for Judgment as a Matter of Law and for a New Trial filed by Defendant and Counterclaimant ThyssenKrupp Elevator Corporation (ECF No. 331); a Motion for Sanctions filed by Defendant and Counterclaimant ThyssenKrupp Elevator Corporation (ECF No. 332); and post-trial briefing filed by Plaintiff and Counter-Defendant AWI Builders, Inc. regarding its claim pursuant to the California Unfair Competition Law (ECF No. 334). For the reasons stated herein, the Court GRANTS IN PART the Motion for Judgment as a Matter of Law and for a New Trial (ECF No. 331), DENIES the Motion for Sanctions (ECF No. 332), and finds that Plaintiff and Counter-Defendant AWI Builders, Inc. has failed to show that it is entitled to relief on its Unfair Competition Law claim (ECF No. 334).

## BACKGROUND

The Court has addressed the extensive procedural history of this action in previous orders (*see, e.g.*, ECF Nos. 211, 286), and so will only discuss aspects relevant to this Order here.

Plaintiff AWI Builders, Inc. ("AWI") brought suit in Los Angeles County Superior Court on May 15, 2019. *See* ECF No. 1-5. AWI brough suit against Defendants ThyssenKrupp Elevator Corporation ("TKE") and Federal Insurance Company ("FIC"). *See id.* TKE removed to this Court on June 28, 2019. *See* ECF No. 1. AWI filed a First Amended Complaint ("FAC") against the same Defendants on October 31, 2019. *See* ECF No. 27. TKE filed an Answer to the FAC and Counterclaims on November 25, 2019. *See* ECF No. 32. TKE brought its counterclaims[1] against AWI and Counter-Defendants Fullerton Joint Union High School District ("Fullerton JUSD"), Great American Insurance Company ("GAIC"), and Hanover Insurance Company ("HIC"). *See id.* The parties stipulated to dismiss Fullerton JUHS on February 10, 2020. *See* ECF No. 45. TKE filed First Amended Counterclaims ("FACC") on March 18, 2020, against AWI, GAIC, HIC, and additional Counter-Defendant Ohio Casualty Insurance Company ("OCIC"). *See* ECF No. 48. On July 25, 2022, the parties filed a Stipulation for Surety Guarantors to be Excused from Appearing at Trial,

---

[1] Because TKE's "counterclaims" were not only brought against the original Plaintiff (AWI) but were also brought against additional entities that had not previously been parties, the claims against additional parties would typically be called third-party claims rather than counterclaims. The Court will use the labels used by the parties for clarity, and so will refer to all of the claims as counterclaims.

which the Court granted. *See* ECF Nos. 97, 98. Pursuant to the stipulation, the sureties (FIC, GAIC, HIC, and OCIC), whose interest in the litigation was only that they were obligated to guarantee certain claims against either AWI or TKE, would not attend trial. *See id.* Thus, although these sureties remain parties to the action, the action proceeded to trial with only AWI and TKE, each bringing claims against one another.

This action relates to various disputes that arose on two construction projects that AWI and TKE each played a role in: the "39 Congress Project," a project related to a medical facility, and the "Sonora Project," a project related to a high school. *See* ECF No. 220.

The Court held a simultaneous jury and bench trial in this action beginning on August 12, 2024. *See* ECF No. 321. In advance of trial, the parties agreed that the Court would decide certain issues via a bench trial. *See* ECF No. 286. The Court denied various motions without prejudice during trial, including a Motion for Judgment as a Matter of Law and a Motion for Sanctions filed by TKE. *See* ECF No. 285. The Court ruled from the bench as to many of the bench trial issues on August 21, 2024, and issued a written order reflecting its findings of fact and rulings on August 26, 2024. *See* ECF No. 286. There is one issue remaining for the Court to decide via bench trial: whether AWI proved its claim against TKE for violations of California Business and Professions Code § 17200 *et seq.* (the "Unfair Competition Law," or "UCL"). *See* ECF No. 316 at 2.

The Jury returned a verdict on August 23, 2024. *See* ECF No. 287. The Jury awarded the parties the following damages on the various claims and counterclaims:

| AWI's Claims Against TKE | |
|---|---|
| AWI's claim against TKE for breach of contract regarding the 39 Congress Project: | $131,419.33 |
| AWI's claim against TKE for breach of contract regarding the Sonora Project: | $180,000.00 |
| AWI's claim against TKE for negligence regarding the 39 Congress Project: | $0 |
| AWI's claim against TKE for negligence regarding the Sonora Project: | $120,000.00 |
| AWI's claim against TKE to execute on license bond regarding both the 39 Congress Project and the Sonora Project: | $5,625.00 |
| **AWI's total damages:** | **$437,044.33** |
| | |
| **TKE's Claims Against AWI** | |

| | |
|---|---|
| TKE's claim against AWI for breach of contract regarding the 39 Congress Project: | $0 |
| TKE's claim against AWI for breach of contract regarding the Sonora Project: | $0 |
| TKE's claim against AWI to execute on license bond regarding both the 39 Congress Project and the Sonora Project | $0 |
| TKE's claim against AWI and GAIC on stop notice release bond regarding the Sonora Project: | $0 |
| TKE's claim against AWI for changed or extra work: | $0 |
| **TKE's total damages:** | **$0** |

*See id.*

After trial, the Court issued Orders setting a briefing schedule for post-trial motions and for AWI's UCL claim. *See* ECF Nos. 316, 320. Pursuant to that briefing schedule,[2] TKE filed the instant Motion for Judgment as a Matter of Law and for a New Trial (ECF No. 331) and the instant Motion for Sanctions (ECF No. 332), and AWI filed a Brief regarding its UCL Claim (ECF No. 334). AWI filed Oppositions to TKE's Motion (ECF Nos. 339, 340) and TKE filed Replies in support of the Motions (ECF Nos. 342, 343). TKE filed a Brief in opposition to AWI's Brief regarding AWI's UCL Claim (ECF No. 337) and AWI filed a Reply (ECF No. 344).

The Court held a hearing on the items addressed in this Motion on January 10, 2024.

**TKE'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL (ECF No. 331)**

## I. Applicable Law

### A. Motion for Judgment as a Matter of Law

After a party has been fully heard on an issue during a jury trial, if the court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," then the court may "resolve the issue against the party." *See* Fed. R. Civ. P. 50(a)(1)(A). Having resolved an issue against a party in this manner, the court may then "grant a motion for

---

[2] AWI indicated that in addition to the Motions described above, it intended to file motions to prejudgment interest, fees, and costs, based on its purported status as the prevailing party. The Court held that such motions should not be heard until the issues addressed in this Order were decided, and so the Court stayed the deadline for such motions. As discussed in the Conclusion of this Order, that stay is now lifted, and the deadline for those motions is as stated in the Conclusion of this Order.

judgment as a matter of law" against that party as to any claim or defense that the party cannot prevail on absent a favorable finding on the issue in question. *See* Fed. R. Civ. P. 50(a)(1)(B).

The standard on a motion for judgment as a matter of law "mirrors" the standard governing a motion for summary judgment, and the "inquiry is the same"—the Court should review the evidence in the record, draw all reasonable inferences in favor of the non-moving party, and grant the motion if there is "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50 (2000).

If the court "does not grant a motion for judgment as a matter of law" pursuant to the procedure above, then the court "is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion" *See* Fed. R. Civ. P. 50(b). The movant may then file a renewed motion for judgment as a matter of law no later than 28 days after the jury's decision. *See id.*

### B. Motion for New Trial

"The court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). Rule 59 does not specify the grounds upon which a new trial may be granted, but the Ninth Circuit recognizes that courts are bound by historically recognized grounds. For example, a new trial may be granted "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). Courts "enjoy[] considerable discretion" in deciding a new trial motion. *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003) (internal quotation marks omitted).

A district court's power to grant a motion for new trial is "much broader" than its power to grant a motion for judgment as a matter of law. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). "The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *Id.* Even if "substantial evidence supports the jury's verdict," the court may grant a motion for a new trial if the verdict is contrary to the clear weight of the evidence, or is based upon false evidence, or

1    if the court otherwise finds in its discretion that the verdict would result in a miscarriage of justice.

2    *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

3    **II.    Discussion**

4    TKE raises several arguments in this Motion, and the Court will address each in turn. For the

5    reasons stated below, the Court GRANTS IN PART TKE's Motion for Judgment as a Matter of Law

6    or for a New Trial.

7    **A.    TKE is Entitled to Judgment as a Matter of Law as to AWI's Negligence Claim
       Regarding the Sonora Project Because AWI's Damages are Barred by the Economic
8      Loss Rule.**

9    TKE's first argument is that TKE is entitled to judgment as a matter of law as to AWI's

10   claim for negligence regarding the Sonora Project. *See* ECF No. 331 at 8–10. The jury awarded AWI

11   $120,000 on this claim. *See* ECF No. 287. The Court finds that AWI's damages on this negligence

12   claim are barred by the economic loss rule, and so holds that TKE is entitled to judgment as a matter

13   of law on this claim.

14   Under California law,[3] the economic loss rule limits what a plaintiff may recover in certain

15   circumstances, particularly on "the often elusive boundary line between tort and contract law." *See*

16   *Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1223 (Cal. 2024). Parties "injured solely by a

17   contractual breach have a narrower set of remedies compared to those available to litigants who

18   suffered tortious injury." *Id.* Damages for breach of contract are generally limited to those

19   foreseeable at the time of contracting, while damages for a tort may include anything that was

20   proximately caused by the tort, regardless of foreseeability. *See id.* The economic loss rule exists to

21   ensure that "the law of contract would not drown in a sea of tort." *See id.* at 1224. The rule is, in

22   sum, "there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning

23   financial harm unaccompanied by physical or property damage." *See id.*

24   The Court instructed the jury prior to deliberations that as to AWI's claims for negligence,

25   the only type of harm that could be considered was "reputational damages." *See* ECF No. 327 at

26

27   _____

28   [3] There does not appear to be any dispute among the parties that California law governs AWI's negligence
     claim regarding the Sonora Project.

78:09–12. TKE previously argued in its initial Motion for Judgment as a Matter of Law that all damages AWI sought (including purported reputational damages) were barred by the economic loss rule, and the Court reserved its ruling on that issue, holding that TKE could "assert, in post-trial briefing, that the economic loss doctrine prevents AWI from recovering" on its negligence claims. *See* ECF No. 286 at 8.

The Court holds that the economic loss rule does indeed bar AWI's recovery. Critically, it appears to the Court that AWI has not shown that it met the requirements for recovery under governing law. The California Supreme Court has explained the rule as follows:

> [U]nder the economic loss rule, tort recovery for breach of a contract duty is generally barred . . . unless two conditions are satisfied. A plaintiff must first demonstrate the defendant's injury-causing conduct violated a duty that is independent of the duties and rights assumed by the parties when they entered the contract. Second, the defendant's conduct must have caused injury to persons or property that was not reasonably contemplated by the parties when the contract was formed.

*Rattagan*, 553 P.3d at 1224.

Further, the California Supreme Court held that any court determining whether the economic loss rule barred recovery must undertake the following three steps:

> First, applying standard contract principles, it must ascertain the full scope of the parties' contractual agreement, including the rights created or reserved, the obligations assumed or declined, and the provided remedies for breach. Second, it must determine whether there is an independent tort duty to refrain from the alleged conduct. Third, if an independent duty exists, the court must consider whether the plaintiff can establish all elements of the tort independently of the rights and duties assumed by the parties under the contract.

*Id.* at 1228.

AWI has identified the wrong done by TKE as follows: TKE "stopped work and introduced self-serving, and one-sided amendments to the contract;" TKE "refused to continue to perform;" per its policy, TKE "refused to even order the much-needed project elevators;" TKE communicated via email that "if AWI did not sign Amendment No. 1, [TKE's representative] would 'cancel the job;'" TKE "wrongfully demanded Amendment No. 1 to insert one-sided terms;" TKE "admitted responsibility for missing every single construction deadline; "TKE's lockdown caused exposure to critical harm;" there were "ongoing and repeated problems with TKE's 'off the shelf standard

7

1   plans;'" an TKE misconduct was "admitted to" and "done purposefully and intentionally as part of

2   TKE's own policies." *See* ECF No. 340 at 7–12.

3       The Court finds that AWI has not identified an independent tort duty to refrain from this

4   conduct. And AWI has not shown that it could establish all of the elements of the tort of negligence

5   independently of the rights and duties under the contract. The Court therefore need not reach the

6   question of whether AWI has shown that harm to reputation qualifies as "injury to persons or

7   property." *See Rattagan*, 553 P.3d at 1224.

8       Instead of showing that the requirements of *Rattagan* have been met, or providing any

9   argument that reputational harm does constitute "injury to property" such that the economic loss rule

10  should not bar recovery, AWI argues that (1) TKE should have raised this argument earlier, and (2)

11  the economic loss rule does not apply because TKE purportedly made intentional

12  misrepresentations. S*ee* ECF No. 340 at 11–12. Each of these arguments miss the mark.

13      First, AWI has not shown that the Motion should be denied simply because TKE did not

14  raise this argument earlier. At the outset, the Court notes that TKE *did* raise this argument earlier (in

15  its initial Motion for Judgment as a Matter of Law and at other times, including in discussions

16  regarding jury instructions), and the Court expressly held that it could be raised after trial. *See* ECF

17  No. 286 at 8. But beyond that, although AWI notes that this *could* have been raised in a motion for

18  summary judgment or other motion, AWI has provided no authority that it needed to have been.

19  AWI attempts to argue that motions for judgment as a matter of law are limited to sufficiency of the

20  evidence, but this does not mean that they cannot be used for legal issues. Here, TKE is essentially

21  arguing that the evidence was insufficient to show that TKE breached a duty independent of the

22  duties in the contract or that AWI suffered any injury to persons or property, which appears

23  appropriate for a motion for judgment as a matter of law. *See* Fed. R. Civ. P. 50(a)(1)(A) (if the court

24  "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party

25  on that issue," then the court may "resolve the issue against the party."). AWI provides no authority

26  that a party waives the right to raise an argument by failing to bring a motion for summary judgment.

27  The Court's understanding is that it is at times appropriate for a party to see what evidence is

28

presented at trial and then argue that the evidence is legally insufficient, instead of arguing that the claims necessarily fail at the summary judgment stage.

Second, AWI has not shown that the economic loss rule does not apply because of purported intentional misrepresentations. As discussed above, the economic loss rule does not apply when two conditions are met (1) the defendant's injury-causing conduct violated a duty beyond the duties assumed in the contract, and (2) the defendant's conduct "caused injury to persons or property that was not reasonably contemplated by the parties when the contract was formed." *Rattagan*, 553 P.3d at 1224. An intentional misrepresentation in the course of performing under a contract might satisfy the first condition, as it would violate a duty beyond the duties in the contract, but it does not follow that it also satisfies the second condition absent further facts. AWI cites to *Robinson*, where the Supreme Court of California held that the economic loss rule does not apply to certain claims for fraud and intentional misrepresentation, without reaching the second condition regarding injury to persons or property. *See Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274–75 (Cal. 2004). As the Supreme Court of California clarified in *Rattagan*:

> It is inaccurate to conclude *Robinson* announced an exception to the economic loss rule. The more accurate understanding is that the case clarified the extent of the rule by demonstrating why the doctrine simply did not apply to the case at issue. Robinson suffered economic losses due to Dana's intentionally tortious conduct, not just those attributable to its breach of contract.

*Rattagan*, 553 P.3d at 1233. Here, unlike in *Robinson*, the claims in question are not for fraud or intentional misrepresentation—instead, AWI's claims are for negligence. And in arguing at length that TKE acted negligently, AWI points only to purported conduct that resembles breaches of contract—"refus[ing] to perform until one-sided amendments were signed," "refus[ing] to order [parts]" until an amendment was signed, and eventual admissions that this conduct caused delays. *See* ECF No. 340 at 7–10. Regardless of whether TKE also made intentional misrepresentations, the conduct underlying the *negligence* claim does not appear to be based on these. Because these claims are for negligence rather than fraud or misrepresentation, and because the underlying conduct does not resemble fraud or misrepresentation, AWI must show both that this conduct violated a non-contract duty and that it caused injury to persons or property. *See Rattagan*, 553 P.3d at 1223. AWI

1  has failed to do so, and so the Court finds that the economic loss rule bars recovery in tort for this

2  contract-related conduct.

3       In the hearing, AWI argued further that the nature of TKE's conduct should result in the

4  Court finding that the economic loss rule does not bar recovery. AWI argued again that the conduct

5  was intentional, and when asked by the Court whether any duties beyond those in the contract were

6  breached, AWI responded that the same conduct had breached both duties under the contract and

7  other duties. But AWI was unable to point to any specific conduct that breached any duty *beyond* the

8  duties in the contract. The Court finds that AWI has failed to show that TKE's conduct breached any

9  duty "independent of the duties and rights assumed by the parties when they entered the contract."

10  *See Rattagan*, 553 P.3d at 1224.

11       Thus, the Court finds that TKE is entitled to judgment as a matter of law as to the AWI's

12  negligence claims, including the claim regarding the Sonora Project on which the jury awarded

13  damages. The Court need not reach the other arguments as to this claim, including TKE's alternative

14  request for a new trial as to the negligence claim. The Court will strike the damages as to the

15  negligence claim regarding the Sonora Project as described in the Conclusion of this section of this

16  Order.

17      **B. TKE is Entitled to Judgment as a Matter of Law that Damages as to AWI's Claim**
**for Breach of Contract Regarding the Sonora Project are Limited to $12,186.96.**

18

19       TKE next argues that the Court should grant judgment as a matter of law to TKE regarding

20  AWI's claim for breach of contract regarding the Sonora Project. TKE's argument is that the jury's

21  award of damages was (per TKE) based on a liquidated damages clause which was waived and/or

22  unenforceable. *See* ECF No. 331 at 14–15. All evidence suggests that the jury's award was indeed

23  based on the liquidated damages clause in question (or on some other theory lacking legal

24  foundation), with the exception of a possible $12,186.96. The Court finds that the liquidated

25  damages were waived and thus cannot be recovered, and so will reduce the damages on this claim to

26  $12,186.96.

27       As background—there was an initial contract regarding the Sonora Project and then an

28  alleged amendment thereto. *See* ECF No. 27-1 (the initial contract); ECF No. 27-3 (the alleged

amendment). TKE asserted that the amendment was properly executed and should be considered part of the contract, while AWI disputed this, arguing that the amendment was executed under duress and thus invalid. *See* ECF No. 222 at 21 (TKE's position); ECF No. 214 at 5–6 (AWI's position). The initial contract contained a clause awarding AWI liquidated damages of $1,500 per day in the event that TKE's breach of the contract caused delay. *See* ECF No. 27-2 at 16. The alleged amendment to the contract contained a clause stating that TKE was not liable for liquidated damages. *See* ECF No. 27-3 at 2. In its order ruling on various bench trial issues, the Court held that the alleged amendment to the Sonora Project included a waiver of liquidated damages (essentially confirming that the waiver clause meant what it appeared to mean). *See* ECF No. 286 at 4. But the Court left to the jury the question of whether the alleged amendment was valid. *See* ECF No. 279 at 3 n.2. The verdict form included a checkbox as to whether the parties modified the contract regarding the Sonora Project. *See* ECF No. 287 at 5. The jury checked the box for "yes," indicating that the alleged amendment was found to be validly executed. *See id.* Thus, per TKE, adding these together, the Court and jury's findings amount to the conclusion that AWI cannot recover for liquidated damages. *See* ECF No. 331 at 14. TKE argues in the alternative that the liquidated damages clause was legally invalid even if not waived. *See id.* at 14–15.

On the same verdict form described above, the jury awarded AWI $180,000 for AWI's claim against TKE for breach of contract regarding the Sonora Project. TKE asserts that this damages award reflects liquidated damages, as it would, per TKE, reflect a liquidated damages award for a delay of 120 days. AWI argues that TKE is making assumptions about how the jury calculated the damages award. *See* ECF No. 340 at 14. But AWI cannot point in its Opposition to any other evidence that would support damages, except for $12,186.96 related to a specific change order. *See id.* And as TKE notes in its Reply (*see* ECF No. 342 at 6), AWI's closing argument also leaned heavily on liquidated damages, requesting (as to this claim) $516,000 for liquidated damages and $12,186.96 for the change order, and no other damages. *See* ECF No. 327 at 141, 148. There is no basis on which to conclude that the jury based its award of the amount beyond $12,186.96 on anything other than liquidated damages.

The Court finds that it would not be appropriate to, as AWI urges, draw the inference that the jury based its award on some other type of damages. As discussed above, the standard on this motion mirrors that on a motion for summary judgment. *See Reeves*, 530 U.S. at 149–50. On a motion for summary judgment, the moving party may meet its burden by showing that the nonmoving party "does not have enough evidence." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once this is done, the nonmoving party must come forward with specific facts showing otherwise, and cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Here, TKE showed that the only possible basis for the damages award beyond $12,186.96 was liquidated damages. AWI has only shown that there is an alternative factual basis for $12,186.96 of the damages awarded by the jury, but argues that the Court should assume there is doubt as to where the rest of the award was derived from. This is not sufficient. The Court finds that the undisputed facts show that the jury based the remainder of the damages award (everything beyond $12,186.96) as to this claim on the liquidated damages clause or some other theory lacking evidentiary support.

Furthermore, the Court finds that, for the reasons described above, AWI waived liquidated damages as to the Sonora Project. AWI has not provided any argument showing otherwise, and this is the natural conclusion from the Court's finding that the amendment contained a waiver and the jury's finding that the amendment was properly executed.

In the hearing, AWI argued that it is possible that the jury awarded damages for harms from delay that were not based on the liquidated damages clause, and that such damages would not be barred by the waiver. AWI argued that there was extensive evidence of delay. But AWI did not point to any evidence showing that the delay caused any actual harm to AWI. It is not enough to claim damages just because a delay occurred, a damages award must be based on some evidence of actual damages. Thus, to the extent that the jury awarded damages based on delay, because AWI cannot point to any evidence it suffered harm (beyond $12,186.96 for change orders), the Court finds that those damages would have lacked a "legally sufficient evidentiary basis." *See* Fed. R. Civ. P. 50(a)(1)(A). In sum, this argument does not save the jury's damages award—regardless of whether

12

the damages were based on the liquidated damages clause of some other estimation of harm from delay, the damages lack evidentiary support for legal viability.

AWI's argument that this issue needed to be raised earlier also fails. *See* ECF No. 340 at 14. As discussed above as to the negligence claim, TKE may argue that the evidence does not legally support the jury's findings. AWI provided no authority suggesting otherwise.

Thus, the Court finds that AWI may not recover for liquidated damages on the breach of contract claim regarding the Sonora Project, and that the undisputed facts show that the jury either based all but $12,186.96[4] of the damages award on liquidated damages, or based all but $12,186.96 on some theory of damages that lacked evidentiary support (e.g., the delay that was not shown to cause harm discussed above). Thus, the Court will reduce the damages on this claim to $12,186.96 as described in the Conclusion of this section of this Order. The Court need not reach TKE's other arguments on this claim, including the alternative request for a new trial.

### C. TKE Is Entitled to Judgment as a Matter of Law that Damages as to AWI's Claim for Breach of Contract Regarding the 39 Congress Project are Limited to $85,533.50.

Next, TKE makes a similar argument as to the jury's damages award on AWI's claim for breach of contract regarding the 39 Congress Project—that it was based on types of damages that were legally invalid, and thus should be reduced as a matter of law. The Court finds that the damages award should be reduced to $85,533.50.

As background—like the Sonora Project, the 39 Congress Project included an initial contract and an alleged amendment thereto. *See* ECF No. 27-1 (initial 39 Congress contract); ECF No. 27-4 (amendment to 39 Congress contract). The Court determined prior to trial, at the parties' request, that as to the 39 Congress Project, the relevant contract is the contract and the amendment thereto as

---

[4] In the hearing, TKE urged the Court to also strike the $12,186.96 and reduce damages on this claim to $0. TKE argued that because the jury gave a round number of $180,000, and that round number can be construed as being derived from a liquidated damages calculation, the Court should assume that all of the amount was for liquidated damages. The Court does not take this view. The Court must draw all inferences in favor of AWI, and doing so, given the Court's finding that $12,186.96 in damages had some evidentiary support, the Court will not assume that the jury's award did not include those damages, despite the round number. The Court finds that any damages beyond the $12,186.96 lacked evidentiary support and/or legal viability and so must be stricken, but that drawing all inferences in favor of AWI, the $12,186.96 is valid.

a collective whole (in other words, they are effectively integrated into one). *See* ECF No. 279 at 1. This collective contract contained a clause in which AWI waived "consequential damages." *See* ECF No. 27-4 at 2. As AWI was dealing with delays allegedly caused by TKE's breach of contract, AWI negotiated and agreed to a $350,000 credit to the building's owner.[5] *See* ECF No. 201. AWI's position was that this credit was damages flowing from TKE's breach. *See id.* TKE's position, on the other hand, was that this credit was not proximately caused by TKE, or alternatively, was waived by AWI as "consequential damages." *See* ECF No. 266 at 22–31. TKE raised this issue at the conclusion of trial, and a related issue of whether AWI could recover for keeping an additional superintendent on duty, and the Court held as follows:

> AWI therefore cannot recover special damages or liquidated damages on the 39 Congress Project. AWI can recover general damages on the 39 Congress Project, which would appear to potentially include the $350K credit and the delta for keeping a higher paid superintendent on duty. Given that this was not the subject of a dispositive motion before trial, to the extent that the jury finds in favor of AWI on this claim, the parties can address in post-trial briefing whether these elements of damages indeed constitute recoverable general damages.

ECF No. 286 at 7–8.

The jury found in favor of AWI on this claim and awarded $131,419.33 in damages. *See* ECF No. 287. The verdict form did not require the jury to specify how this number was calculated or what it included. *See id.* TKE concedes that the damage award may have been based on certain other types of damages that would not be barred by the consequential damages waiver. *See* ECF No. 331 at 17–18. TKE notes that AWI requested (what TKE describes as) "$83,474.40 that appears to represent change orders it paid to TKE 'under dispute' combined with $48,000.00 [AWI] claims it was entitled to for work that TKE didn't perform." *See id.* at 17. TKE asserts that the evidence does

---

[5] In the hearing, counsel for TKE stressed that AWI's owner, Robert Mekikyan, testified that (per TKE's summary) he understood the concept of a consequential damages waiver and knew that AWI's contract with the building's owner included such a waiver. TKE sought to use this fact to argue that AWI had not actually been obligated to award the building owner a $350,000 credit, and thus that TKE should not be obligated to pay AWI $350,000 in damages (either because such damages were consequential or were not TKE's fault at all). The Court does not find Robert Mekikyan's testimony on this topic dispositive given that he is not a lawyer, and given that even if he believed he was not legally obligated to pay anything to the building owner, he may have nevertheless determined that the $350,000 credit was the best course of action to avoid litigation risk.

1    not support any damages for the change orders paid under protest, but argues that even if the Court

2    disagrees, the change orders amounted to no more than $83,474.40, and thus the damages award

3    must be reduced. *See id.* at 18.

4        General damages are those that flow "directly and necessarily from a breach of contract, or

5    that are a natural result of a breach." *See Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch.*

6    *Dist.*, 102 P.3d 257, 261 (Cal. 2004). They are damages that the parties expressly contemplated at

7    the time of contracting, or the parties are assumed to have contemplated them "because their

8    occurrence is sufficiently predictable the parties at the time of contracting." *See id.* Special damages,

9    in contrast, are those "that do not arise directly and inevitably from any similar breach of any similar

10   agreement." *See id.* Typical examples of consequential damages include: "lost profits; down or idle

11   time; interest and finance charges; loss of use of goods; overhead, labor, equipment or other

12   expenses incurred by buyer as a result of a seller's breach." *See id.* These are generally only

13   recoverable if the circumstances in which they arise were communicated to or known to the

14   breaching party at the time of contracting. *See id.* Here, as discussed above, the Court has already

15   ruled that AWI waived the right to recover special damages, and so it is irrelevant whether TKE

16   knew of the circumstances leading to special damages—to the extent that AWI's damages were

17   special damages, they are not recoverable due to the waiver.

18       The Court finds that the credit given to the building owner and the cost of keeping a

19   superintendent on duty were special damages. Each of these were derived from AWI's particular

20   requirements and are not inherently part of damages that flow from all breaches of construction

21   contracts. Although these damages might be recoverable in normal circumstances if TKE knew of or

22   had reason to know of AWI's particular situation, AWI waived the right to recover them here as

23   discussed above. In the hearing, AWI argued that lost profits in the construction context can be

24   construed as general rather than special damages, and thus that the items above are not invalid. In

25   support, AWI pointed to *Stark v. Shaw*, where a California Appellate Court held that a party to a

26   construction contract could recover lost profits if they were properly proven. *See Stark v. Shaw*, 155

27   Cal. App. 2d 171, 180 (1957). But *Stark* did not distinguish general damages from special damages,

28   and thus its holding that lost profits are sometimes recoverable has little application to the dispute

here, which centers on AWI's waiver of special damages. AWI also argued that *Lewis Jorge* stands for a rule that general damages are any damages that are foreseeable. The Court does not read *Lewis Jorge* this way—*Lewis Jorge* held that general damages are those that are "a natural and necessary consequence of a contract breach." *See* Lewis Jorge, 102 P.3d at 261. The *Lewis Jorge* court noted that general damages are "often said to be within the contemplation of the parties, meaning that because their occurrence is sufficiently predictable the parties at the time of contracting are 'deemed' to have contemplated them. *See id.* But the *Lewis Jorge* court did not define general damages as all foreseeable damages. *See id.* Instead, the *Lewis Jorge* court explicitly noted that "Special damages are among the losses that are foreseeable and proximately caused by the breach of a contract." *See id.* at 262. Thus, the line between general and special damages does not turn on foreseeability, as special damages may be foreseeable. *See id.* AWI finally argued that *Lewis Jorge* is factually distinguishable, but AWI has not shown that *Lewis Jorge*'s rule as to what constitutes general vs. special damages is not correct. The Court finds that, as discussed above, the credit to the building owner and the cost of a superintendent are special damages. Thus, they are not recoverable given the waiver.

TKE has not shown that AWI cannot recover for change orders paid under protest, and so the Court will not eliminate the portion of the damages on this claim that appear potentially derived from these change orders. AWI has pointed to evidence that AWI paid a number of change orders under protest amounting to a total of $85,533.50. *See* Ex. 32 (a series of change orders submitted by TKE to AWI, totaling $85,533.50). After AWI pointed to this evidence and other evidence in its Opposition, TKE did not respond at all in its Reply. *See* ECF No. 430 at 16, ECF No. 342. The Court thus finds that, drawing all inferences in favor of TKE, the jury may have validly based up to $85,533.50 of the damages award on the change orders paid under protest, which would not have been waived as consequential damages. [6] AWI's damages on the breach of contract claim as to the

---

[6] In the hearing, and in a footnote to its Motion, TKE argued that the damages for change orders are based on a calculation that comes from an exhibit not in evidence (page 2 of Exhibit 46). *See* ECF No. 331 at 17 n.2. First, the final Exhibit List filed at the close of trial reflects that page 2 of Exhibit 46 was admitted. *See* ECF No. 288 at 10. But even if TKE's assertion were correct, and the damages number AWI requested in its

39 Congress Project shall thus be reduced to $85,533.50 as described in the Conclusion of this Order.

### D. TKE Failed to Show that It Is Entitled to Judgment as a Matter of Law on its Claim for Breach of Contract Regarding the Sonora Project.

TKE's final argument is that it is entitled to judgment as a matter of law on its affirmative claim for breach of contract as to the Sonora Project. On this claim, the jury found that TKE did not "do all, or substantially all, of the significant things that the contract required it to do," and thus awarded TKE no damages. *See* ECF No. 287 at 11–12. This finding follows a finding that TKE had breached the contract regarding the Sonora Project, for which the jury awarded AWI damages. *See id.* at 5–7.

TKE argues that these findings are not supported by evidence, but provides very little detail as to why. The Court found above that TKE was entitled to a reduction in damages as to AWI's claims for breach of contract on the Sonora Project (from $180,000 to $12,186.96), but did not find that the TKE was entitled to a finding that TKE did not breach the contract. In the hearing, TKE stressed that the facts the parties stipulated to show that (1) TKE was entitled to $120,000 under the Sonora Project contract, and (2) AWI only paid TKE $54,000 on the Sonora Contract. *See* ECF No. 162 at 8. But it is a basic precept of contract law that a party must have performed his or her obligations under a contract in order to recover for a breach. *Pry Corp. of Am. v. Leach*, 177 Cal. App. 2d 632, 639 (1960) ("A party complaining of the breach of a contract is not entitled to recover therefor unless he has fulfilled his obligations. [Numerous citations.]"). The jury found that TKE had

_____

closing statement was reflected in a summary document not in evidence, it does not follow that there was no evidence to support the underlying damages. As discussed above, another exhibit—Exhibit 32—appears to provide a possible basis for a damages award of $85,533.50 based on change orders paid under protest. TKE further argued that all of the work represented in these change orders was actually performed by TKE, as confirmed by a TKE witness (which TKE asserts without citation to his testimony), and thus AWI cannot have been harmed by paying the change orders under protest. *See id.* But even accepting that the witness testified as TKE asserts, it is possible that the jury did not believe the TKE witness's testimony on this subject and nevertheless opted to award damages for the change orders paid under protest. After AWI pointed to a possible evidentiary basis for this award, TKE failed to respond and rebut the possibility that the jury validly awarded these damages. TKE has not met its burden of showing that these damages are not supported by any evidence and so the Court will not strike this portion of the damages.

failed to perform its obligations on the Sonora Project contract and determined that no damages should be awarded. *See* ECF No. 287 at 11–12 (as to TKE's breach of contract claim for the Sonora Project, the jury found that TKE did not "do all, or substantially all, of the significant things that the [Sonora Project] contract required it to do" and that TKE was not excused from have to do these things; *see also id.* at 5–6 (as to AWI's breach of contract claim for the Sonora Project, the jury found that TKE "fail[ed] to do something that the contract required it to do"). TKE has not shown that the finding that it breached the Sonora Project contract was erroneous or shown that the breach was of a nature where damages should still be recoverable.

In light of the Court upholding the jury's finding that TKE breached the relevant contract regarding the Sonora Project, the Court sees no reason to disturb the jury's finding that TKE is not entitled to recover damages because it itself failed to perform on this contract. The Court will not grant TKE damages on this claim as TKE seeks.

### III.    Conclusion

For the reasons stated herein, TKE's Motion is GRANTED IN PART. The Court will amend the jury's damages awards as described below:

| AWI's Claims Against TKE | | |
|---|---|---|
| | Jury's Award | Adjusted Award |
| AWI's claim against TKE for breach of contract regarding the 39 Congress Project: | $131,419.33 | $85,533.50 |
| AWI's claim against TKE for breach of contract regarding the Sonora Project: | $180,000.00 | $12,186.96 |
| AWI's claim against TKE for negligence regarding the 39 Congress Project: | $0 | $0 |
| AWI's claim against TKE for negligence regarding the Sonora Project: | $120,000.00 | $0 |
| AWI's claim against TKE to execute on license bond regarding both the 39 Congress Project and the Sonora Project: | $5,625.00 | $5,625.00 |
| **AWI's total damages:** | **$437,044.33** | **$103,345.46** |
| | | |
| **TKE's Claims Against AWI** | | |

|  | Jury's Award | Adjusted Award |
|---|---|---|
| TKE's claim against AWI for breach of contract regarding the 39 Congress Project: | $0 | $0 |
| TKE's claim against AWI for breach of contract regarding the Sonora Project: | $0 | $0 |
| TKE's claim against AWI to execute on license bond regarding both the 39 Congress Project and the Sonora Project | $0 | $0 |
| TKE's claim against AWI and GAIC on stop notice release bond regarding the Sonora Project: | $0 | $0 |
| TKE's claim against AWI for changed or extra work: | $0 | $0 |
| **TKE's total damages:** | **$0** | **$0** |

## TKE'S MOTION FOR SANCTIONS (ECF No. 332)

### I.  Applicable Law

Federal Rule of Civil Procedure 26 obligates a party to disclose the identities of witnesses and provide copies of documents that the party "may use to support its claims or defenses, unless the use would be solely for impeachment." *See* Fed. R. Civ. P. 26(a)(1)(A). This disclosure generally must be made "without awaiting a discovery request." *See id.* These disclosures must be supplemented "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect," or as ordered by the court. *See* Fed. R. Civ. P. 26(e).

If a party fails to disclose the information described above, then, pursuant to Federal Rule of Civil Procedure 37, "the party is not allowed to use that information or witness" at trial or otherwise. *See* Fed. R. Civ. P. 37(c)(1). The court may also impose "other appropriate sanctions." *See id.* Exclusion of evidence is not appropriate if the failure to disclose it was "substantially justified or harmless." *See Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022).

### II.  Discussion

Here, TKE requests sanctions for two broad categories of conduct: (1) AWI's purported untruthful statements to the Court regarding the negligence causes of action and (2) AWI's purported failure to disclose certain documents. The Court finds that neither category warrants sanctions.

### A. The Court Will Issue an OSC re Whether AWI's Counsel David Sire Made Untrue Statements or Exhibited a Lack of Candor to the Court and Whether Sanctions Should Issue.

This Motion relates in part to the history of AWI's negligence claims. AWI's FAC, filed on October 31, 2019, included a negligence cause of action against TKE. *See* ECF No. 27. On April 23, 2021, AWI's counsel, David Sire ("Sire"), stated in an email to TKE's counsel "I am removing the negligence cause of action and a related defense for contribution." *See* ECF No. 283-1 at 7. AWI never filed an additional amended complaint that removed the cause of action. TKE asserts that based on this representation, TKE understood that AWI was no longer pursuing negligence, and TKE did not take discovery into that claim or otherwise prepare for it. *See id.* at 2. According to TKE, three years later, in advance of the latest in a series of final pretrial conferences in this matter, AWI indicated to TKE on July 2, 2024, that AWI believed the jury instructions should include instructions on negligence. *See* ECF No. 283-1 ¶ 4; ECF No. 214 at 121. The parties filed joint disputed jury instructions reflecting their disagreement as to whether negligence should be included the next day. *See id.* At the conference, the Court inquired as to the dispute. *See* ECF No. 283-1 at 15–20.[7] Sire represented to the Court that although the negligence cause of action had not been mentioned in any filing in the previous three years, his understanding was that it was "still in play," and that to the extent it had not been mentioned in previous filings, this was an "omission" and was "inadvertent." *See id.* at 16. In light of what appeared to be dissembling on behalf of counsel—where he pointed to unrelated and irrelevant alleged transgressions by opposing counsel—the Court admonished counsel to focus on what *he* had done and pointedly asked: "So it's your assertion as an officer of the court that the omission of negligence was inadvertent?" *See id.* Sire responded "Yes, Your Honor." *See id.*

In light of Sire's previous email in which he represented that he was deliberately removing references to the negligence cause of action, it appears to the Court that Sire's statements to the Court that the omission of negligence from previous filings was inadvertent were untrue. In its Opposition briefing, AWI does not dispute that Sire made an untrue statement to the Court—AWI

---

[7] The final pretrial conference in question was recorded, but it appears that no official transcript was ever prepared. TKE provided an unofficial transcript based on the recording. *See* ECF No. 283-1. The Court has reviewed both the recording and the unofficial transcript and finds that the recording marches the relevant portion of the transcript provided. AWI does not dispute that the transcript is accurate in the relevant portion.

argues that only a court order may dismiss a cause of action, and that TKE should have been more diligent, but does not dispute that Sire made a false statement in his efforts to ensure that AWI was able to take the negligence claim to trial.[8] *See* ECF No. 339. Another possibility is that Sire *told* opposing counsel he was removing the negligence claim, but did not intend to do so, and sometime thereafter inadvertently removed it. Although this would make the statement technically true, it would still represent a significant lack of candor to the Court in context.

TKE's counsel was not able to locate the email proving the apparent falsity of Sire's statement until after trial began.[9] The Court allowed that claim to go to trial,[10] and the jury awarded AWI damages on that claim as described above. Although the Court has now determined that AWI is entitled to judgment as a matter of law on the negligence claim, and so in one respect Sire's purported misstatement was ultimately harmless, this Court is not inclined to countenance a blatant lack of candor to the Court, if it occurred.

The Court issues an Order to Show Cause as to whether Sire made a false statement to the Court or otherwise exhibited a lack of candor to the Court in making his statements regarding the negligence claim, and, if so, why sanctions should not issue. The parties shall meet and confer on an appropriate briefing schedule and hearing date as described in the Conclusion of this Order.

**B. TKE Has Not Shown that Sanctions are Warranted for AWI's Purported Failure to Disclose Documents or Information.**

TKE asserts that AWI failed to produce or disclose certain documents or information. First, TKE asserts that AWI failed to produce the master schedule associated with the 39 Congress project.

---

[8] In the hearing, AWI's counsel (a different attorney, not Sire) argued extensively that Sire's statements were not an intentional effort to deceive the Court, and that he knows Sire to be an attorney who litigates with candor.

[9] TKE's inability to quickly locate the email in which Sire represented that he would remove the negligence cause of action is understandable, given that nearly three years passed before AWI reasserted the claim.

[10] The Court makes no ruling on whether it would have been permissible for AWI to proceed on the negligence cause of action had Sire revealed the truth—that he had represented in an email that he would withdraw the claim, but ultimately never formally did so—and then argued that the claim was not withdrawn. The Court's only findings here are that Sire's statement that the negligence cause of action was "inadvertently" omitted from certain filings was not true, and that Sire knew or had reason to know that it was not true.

See ECF No. 332 at 7. Second, TKE asserts that AWI failed to produce the "specific version of Amendment No. 1 to the 39 Congress project that was missing handwritten notations in the top left corner of the document." *See id.* Per TKE, these two failures prohibited TKE from taking discovery into the 39 Congress Project and ultimately contributed to the jury's finding for AWI on claims related to it. *See id.* at 8. And third, TKE asserts that AWI failed to disclose the fact that AWI had (per TKE) "retrained the company that employed AWI's testifying expert witness Sorenson [Nitro] to handle scheduling issues on the Sonora project or the fact that Nitro authored and provided AWI with written reports ascribing causes of delay in connection with the Sonora project to reasons outside of TKE's control." *See id.* at 7. Per TKE, TKE learned of this fact when documents were produced by a third party pursuant to a subpoena, and AWI's evidentiary objections prevented the evidence from being admitted at trial. *See id.* This purportedly contributed to the jury finding for AWI on claims relating to the Sonora Project. *See id.* at 8.

The Court finds that none of this conduct warrants sanctions. First, as to the two documents that were purportedly not produced until trial—the Court notes that AWI asserts that these documents were first produced to TKE in January of 2024, months in advance of the August 2024 trial. *See* ECF No. 339 at 8. TKE does not deny this in its Reply. *See* ECF No. 343. And the documents (Exhibits Nos. 183–191) were included on an Exhibit List filed in February of 2024 (*see* ECF No. 188 at 35–38) and included again on an Exhibit List filed in advance of trial (*see* ECF No. 239 at 35–38). Although each of these lists stated TKE's objection that the documents had not been timely disclosed, the record shows that TKE had the documents with plenty of time to prepare for trial; it is simply not true that AWI "ambushed" TKE with these documents at trial as TKE asserts. *See id.*; *see also* ECF No. 332 at 7. Further, despite knowing of the documents, TKE never requested that trial be delayed to allow discovery into them. The typical remedy for failure to timely produce documents, per Federal Rule of Civil Procedure 37, is exclusion of the documents. *See* Fed. R. Civ. P. 37(c)(1). This objection was properly addressed at trial, with exhibits either withdrawn or the objection overruled. The Court's decision to overrule the objection and allow certain of these documents to be introduced as exhibits was proper given that TKE appears to have had sufficient time before trial to prepare. Having already decided whether the typical remedy applied, the Court

will not now sanction AWI for the late disclosure. Second, as to the purported failure to disclose information regarding Nitro—TKE concedes that it still learned this information in advance of trial through a subpoena. *See* ECF No. 332 at 8. Thus, it appears that nondisclosure was harmless. *See Liberty Ins. Corp.*, 41 F.4th at 1192. Any harm done was the result of TKE's failure to present its evidence regarding Nitro and its reports in authenticated and admissible form after AWI's objection. *See* ECF No. 332 at 8. This does not warrant sanctions in the Court's view.[11]

### III. Conclusion

For these reasons, the Motion for Sanctions is DENIED. TKE is ORDERED TO SHOW CAUSE as to whether Sire made a false statement to the Court or otherwise exhibited a lack of candor to the Court in making his statements regarding the negligence claim, and if so, why sanctions should not issue. The parties shall meet and confer and submit a proposed briefing schedule and hearing date as described in the Conclusion of this Order.

### AWI'S UCL CLAIM (ECF No. 334)

### I. Applicable Law

In an action where the court tries the facts without a jury, "the court must find the facts specially and state its conclusions of law separately." *See* Fed. R. Civ. P. 52(a)(1). "The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." *Id.*

California's Unfair Competition Law, or UCL, defines unfair competition to "include any unlawful, unfair or fraudulent business act or practice." *See* Cal. Bus. & Prof. Code § 17200. This "sweeping language" applies to "anything that can properly be called a business practice and that at the same time is forbidden by law." *Abbott Lab'ys v. Superior Ct. of Orange Cnty.*, 467 P.3d 184, 188 (Cal. 2020). The "statute's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Id.*

---

[11] In the hearing, TKE requested that the Court not only order AWI to show cause as to Sire's misstatements, but also as to these disclosure issues. The Court denies this request as the matter is settled for the reasons discussed above.

1  In order to bring a UCL claim, a plaintiff must have statutory standing. *See Kwikset Corp. v.*

2  *Superior Ct.*, 246 P.3d 877, 884–88 (Cal. 2011). This requirement is distinct from and goes beyond

3  the typical Article III standing requirements for federal court jurisdiction. *See id.* A person has

4  standing for a UCL claim only if "(1) she has suffered economic injury or damage, and (2) this

5  injury or damage was the result of, i.e., caused by, the unfair business practice, false advertising or

6  the CLRA violation that is the gravamen her claim." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App.

7  5th 1125, 1137 (2020).

8  The UCL generally does not apply to disputes over contracts between private entities. Suits

9  between competitors or suits where the underlying conduct harms the general public may be an

10  exception to this rule.[12] "[W]here a UCL action is based on contracts not involving either the public

11  in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely

12  on the UCL for the relief it seeks." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th

13  115, 135 (2007). In contrast, a UCL claim must focus on an "an unlawful business practice or false

14  advertising that harms individual consumers," and "the consumer/victims" should be "powerless

15  individually." *Rosenbluth Internat., Inc. v. Superior Ct.*, 101 Cal. App. 4th 1073, 1078 (2002). As

16  one district court described the state of the law, *Linear Technology* and related cases "essentially

17  withdraw[] UCL standing from non-competitor corporate plaintiffs seeking to bring a UCL action

18  based on contracts not involving either the public in general or individual consumers." *IV Sols., Inc.*

19  *v. Connecticut Gen. Life Ins. Co.*, Case No. 2:13-cv-09026, 2015 WL 12843822, *17 (C.D. Cal. Jan.

20  29, 2015).

21  The only remedies available to a private plaintiff for a UCL claim are equitable remedies of

22  "injunctive relief and restitution." *Zhang v. Superior Ct.*, 304 P.3d 163, 167 (2013). Damages are not

23  _____

24  [12] Although some precedent suggests that suits between competitors are an exception to the rule that the UCL does not apply to contractual disputes between private entities, the underlying caselaw does not make clear

25  that this is actually the case or define the contours of the exception. For example, *Linear Technologies* stated that the private entities in question could not pursue UCL claims related to their contracts because the victims

26  were "neither competitors nor powerless, unwary consumers." *See Linear Tech.*, 152 Cal. App. 4th at 135. But the case cited in support, *Rosenbluth International, Inc. v. Superior Court*, does not actually suggest that

27  competitors can bring UCL claims related to contracts, and instead discusses only the latter point that *Linear Technology* made—that private entities cannot bring such suits where the victims are not powerless

28  consumers. *See Rosenbluth Internat.*, 101 Cal. App. 4th at 1078.

available. *See id.* Restitution is limited to restoration of money acquired by means of unfair competition, and so a "restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *See id.* at 168. As with all equitable relief, a plaintiff seeking equitable relief under the UCL must establish that he or she "lacks an adequate remedy at law" to win an injunction or restitution. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

## II.    **Findings of Fact**

The Court finds the following facts in making the ruling contained herein:

1. AWI and TKE are each private corporations.

2. The only parties to the initial contract on the 39 Congress Project (ECF No. 27-1) and the amendment thereto (ECF No. 27-4) were AWI and TKE.

3. The 39 Congress Project contracts between AWI and TKE were to build a medical facility for Huntington Orthopedics Institute, LLC ("Huntington"), a private corporation.

4. The only parties to the initial contract on the Sonora Project (ECF No. 27-2) and the amendment thereto (ECF No. 27-3) were AWI and TKE.

5. The Sonora Project contracts between AWI and TKE were to build a school for Fullerton JUSD, a public entity. Under these contracts, TKE was to assist AWI with construction of a school by installing certain elevators.

6. Despite the dispute between AWI and TKE, the elevators at the Sonora Project were operational when the school opened. *See* ECF No. 325 at 84:06–08.

7. Although there is some evidence that the dispute and the parties' conduct caused construction delays on the Sonora Project (that is, caused certain steps of construction to be completed later than initially planned), there is no evidence in the record that the opening of the school was delayed as a result of these construction delays.

The Court finds it unnecessary to make any further findings of fact in connection with this Order.

## III.    **Discussion**

1    The Court finds that AWI lacks standing to pursue its UCL claim because this is a

2    contractual dispute between private corporations and does not involve the public.

3        As discussed above, a corporate plaintiff generally cannot use the UCL to vindicate its rights

4    under a contract, and a UCL claim should be brought to protect the rights of individual consumers

5    who are powerless to sue on their own. *See Linear Tech.*, 152 Cal. App. 4th at 135. This limitation

6    exists in part to prevent situations where one corporate plaintiff brings a UCL claim acting as a "self-

7    appointed representative" for other victims of a practice, and deprives those other victims "of the

8    individual opportunity to seek remedies far more extensive than those available under the UCL." *See*

9    *id.* Thus, even where there are other victims of a practice, a plaintiff generally cannot bring a UCL

10   claim if those victims are capable or representing their own interests. *See id.*

11       Here, AWI is seeking to use the UCL to vindicate its rights in what is essentially a breach of

12   contract suit between private entities. Although AWI has some non-contract claims, these claims are

13   derived from the same fundamental conduct and relate to the parties' contractual relationship, and no

14   authority suggests that the plaintiff's inclusion of some non-contract claims in addition to breach of

15   contract removes the case from the exception to standing established in *Linear Tech*.

16       There is no evidence that the public or any individual consumers were harmed by TKE's (or

17   AWI's) conduct, and to the extent that other corporations were harmed or might be harmed, they can

18   represent their own interests. First, to the extent that Huntington was harmed by issues with the 39

19   Congress Project, Huntington could bring its own suit to vindicate its rights. *See Linear Tech.*, 152

20   Cal. App. 4th at 135 (finding a UCL claim inappropriate where corporate entities potentially harmed

21   "[have] the resources to seek damages or other relief should [they] choose to do so."). In the hearing,

22   AWI argued that Huntington's patients were harmed by the delays in the elevator construction at this

23   medical facility, but did not point to any evidence that any patient was actually harmed, instead just

24   arguing that logic suggests they would have been. The Court finds this insufficient. Even assuming

25   that AWI had evidence that patients were affected by delays, if delays in a construction project were

26   construed as harming the ultimate users of the building (and thus harming the public), then a wide

27   range of private contractual disputes regarding construction would be subject to UCL claims, and the

28

Court finds this inconsistent with the limits described above and unsupported by any precedent.[13]

Second, there is no evidence that Fullerton JUSD (which could bring its own suit, like Huntington above) or its students were harmed at all; AWI did not show that the issues with the Sonora Project delayed the opening of the school year or otherwise cause harm to the school district or its students. No authority suggests that the mere fact that a contract involves a school district as a beneficiary leads to the conclusion that private corporations that are parties to that contract may sue each other for UCL violations where there is no evidence that the conduct underlying the UCL claim affected the school district or its students. AWI asserts that TKE's practices may affect other customers of TKE, but these customers can bring their own suits—there is no evidence to suggest that these customers are powerless individually and need AWI to represent them through the UCL claim. The Court finds that because there is no evidence that the public was harmed, AWI cannot bring its UCL claim.

In the hearing, AWI argued that it a competitor of TKE, and that this allows AWI to bring a UCL claim. Although AWI is a primary contractor and TKE is an elevator subcontractor, primary contractors bid on public works projects with identified subcontractors, and thus, per AWI, it is likely that AWI will bid against other primary contractors that will be "teamed up" with TKE for the bids, and that AWI will effectively compete against TKE. First, although AWI argued that it will likely compete with TKE, AWI did not actually provide any evidence supporting this, and did not point to any facts in evidence in its argument. The court need not settle the exact contours of when competitors may bring UCL suits—all authority suggests that there are limits on UCL suits brought by parties who had a contract to work together, and although it might be different if the conduct in question was focused on competition, here, that is not what occurred. "Where the UCL action is based on a contract, the representative plaintiff may seek to vindicate the rights of individual consumers who are parties to the contract . . . a UCL action based on a contract is not appropriate

---

[13] In the hearing, when asked about the breadth of the rule being advocated for, AWI's counsel argued that not all construction contracts would be construed as causing harm to the public when breached. Per counsel, mere non-payment would not cause delay, and so there would be no UCL claim for non-payment, and instead only for breaches of contract that delay completion. This still appears to the Court exceedingly broad and not in keeping with the governing case law.

where the public in general is not harmed by the defendant's alleged unlawful practices." *Rosenbluth*, 101 Cal. App. 4th at 1078. The Court finds that AWI has not shown that any member of the public or consumer was harmed by the practices complained of, and so AWI lacks standing for a UCL suit based on the contractual and non-competitive relationship at issue here.

AWI points to several district court cases to argue otherwise, none of which convince the Court that the analysis above is incorrect. First, AWI cites to *In re Webkinz Antitrust Litigation*, where a court in the Northern District of California wrote that the UCL "grants standing to companies of varying size, to defend the rights of the general consuming public against unfair and fraudulent business practices." *See In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 999 (N.D. Cal. 2010). The Court went on to hold that the plaintiffs there lacked standing, as they had failed to plead their claims in a way that "state[d] a connection to the protection of the general public." *See id.* The Court finds that, at the conclusion of the evidence here, AWI suffers from the same defect—it is not clear how AWI's purported UCL claim protects the rights of the public rather than AWI, as the only other entities potentially or actually harmed could bring their own suits. Next, AWI cites *Free Range Content, Inc. v. Google Inc.*, where the court held that the plaintiffs had UCL standing despite *Linear Tech*. *See Free Range Content, Inc. v. Google Inc.*, Case No. 5:14-cv-02329, 2016 WL 2902332 (N.D. Cal. May 13, 2016). Plaintiffs were advertisement publishers who alleged that Google had terminated ads without cause and withheld earnings, and the Court noted that the lawsuit implicated the rights of consumers who click on ads hosted on Google. *See id.* at *17. This action is distinguishable—there is no similar class of consumers that AWI's claims would protect. Finally, AWI cites to *Grocery Outlet, Inc. v. Naftali, Inc.*, which AWI notes cited *Free Range* favorably. *See Grocery Outlet, Inc. v. Naftali, Inc.*, Case No. 23-cv-05254, 2024 U.S. Dist. LEXIS 130906, *10 (N.D. Ca. Jul 24, 2024). But *Grocery Outlet* went on to distinguish from *Free Range*, noting that unlike in *Free Range*, the dispute in *Grocery Outlet* was "based on a private, contractual dispute between two corporate entities—not a form contract—and the pleadings do not suggest that [defendant's] allegedly unfair, deceptive, and unlawful acts implicated any individual consumers or the public in general." *See id.* The Court finds essentially the same here.

Thus, the Court finds that AWI cannot prevail on its UCL claim based on the facts as presented at trial. The Court need not reach any further issues regarding that claim.

**IV.    Conclusion**

For the reasons stated herein, the Court finds that AWI has failed to show it prevails or is entitled to any remedy on its UCL claim.

### CONCLUSION

For the reasons stated herein, the Court ORDERS as follows:

1.  TKE's Motion for Judgment as a Matter of Law or a New Trial (ECF No. 331) is GRANTED IN PART. The damages award in this action shall be amended as described in the conclusion of the section regarding this Motion above.

2.  TKE's Motion for Sanctions (ECF No. 332) is DENIED.

3.  AWI is ORDERED TO SHOW CAUSE as to whether Sire made a false statement to the Court or otherwise exhibited a lack of candor to the Court in making his statements regarding the negligence claim, and if so, why sanctions should not issue as described above. The parties are ORDERED to meet and confer, and, within fourteen (14) days of this Order, file a joint status report with a proposed briefing schedule and hearing date.

4.  The Court finds that AWI has failed to show that it is entitled to relief as to its UCL Claim (ECF No. 334)

5.  The previously ordered stay of the deadline for contemplated motions for interest, fees, and costs is LIFTED. Any such motions must be filed within thirty (30) days of this Order.

IT IS SO ORDERED.

Dated: January 16, 2025

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge